The appellants, who are citizens and residents of Anne Arundel county, filed the bill in this case to enjoin the Board of County Commissioners of that county "from building a wharf on Rockhold Creek or at Cedar Point, or at any other point adjacent thereto, or elsewhere in the waters of Anne Arundel county without the authority of an Act of Assembly". The bill was demurred to, demurrer sustained, and from the order sustaining it this appeal was taken. It is to be observed in limine, that the order sustaining the demurrer neither granted leave to amend nor dismissed the bill, and the order was therefore not strictly such final order as to permit an appeal to be taken from it. The opinion of the circuit judge appearing in the record makes it plain, however, that in his view the allegations of the bill did not present a case, under which any such relief as that prayed for could be granted, and that the bill would ultimately have to be dismissed. No good end would, therefore, be accomplished by dismissing this appeal on what is merely a technical defect.
The allegations of the bill are, that the County Commissioners have advertised for proposals for the construction of a wharf in Rockhold Creek, that they further intend to advertise and give out a contract for a wharf to be placed at the mouth of Cedar Point in West River, and also a pier or wharf attached to South River Bridge. It is further alleged that Rockhold Creek is but a narrow tributary of Herring Bay, and that the produce raised and shipped from there is of infinitesimal value, that the said creek is so narrow and the water so shallow that a vessel drawing over four feet will be unable to get to or from the wharf there, except on very high tide, that no public demand exists for the establishment of such a wharf, that a commission appointed in 1911 reported unfavorably upon the establishment of a wharf on Rockhold Creek, which report was adopted by the Board of County Commissioners, and that subsequently another commission was appointed at the *Page 387 
instigation of interested parties, which made a favorable report; that the establishment and building of such wharf or wharves would operate as a distinct injury to the taxpayers of the county, and that the County Commissioners have no authority in law to build wharves without an Act of the Legislature.
The Code of Public General Laws, Article 25, contains the general grant of powers to County Commissioners, as bodies corporate, and contains an enumeration of the powers conferred and the method of their exercise with regard to many matters. The effect of this grant is to vest in the County Commissioners but a limited authority; Tasker v. Garrett County, 82 Md. 153; and hence they can only perform acts expressly or impliedly permitted by their charter or conferred on them by the General Assembly.Peter v. Prettyman, 62 Md. 571. But in the performance of their duties and in the execution of the powers expressly or impliedly given them, they are ordinarily vested with the exercise of a discretion. Blundon v. Crosier, 93 Md. 358.
The question which presents itself in this case is, Have or not the County Commissioners of a county, the power to erect wharves as one of the powers expressly or impliedly conferred on them? Sections 105 and 106 of the Code of Public General Laws (1912), Article 25, sub-title "Public Landings," are as follows:
"105. In all cases where the public convenience requires it the County Commissioners shall have power to establish a public landing upon any navigable river, canal, bay, sound or other navigable waters.
"106. Upon all applications to establish a public landing, the same proceedings shall be had as on application to open a public road."
On behalf of the appellant, it is insisted that the power contained in these two sections neither expressly nor impliedly vests in the County Commissioners the power to establish or build wharves. Section 91 of the same article relates to public roads, but among other provisions contained *Page 388 
in it is the following: "And it shall be lawful for the said County Commissioners of any county so to contract for land for a public wharf, drains for county roads or other public use or uses, which said land shall be the property of said county subject to said use or uses." This would seem by express language to confer upon the County Commissioners the power to construct wharves, for it is hardly conceivable that power should be given to a Board of County Commissioners to contract for lands for a public wharf, and yet not give them the power to build such wharf, when they had in pursuance of an expressed power contracted for the land for it. But even if this provision were not contained in the Code, there is undoubtedly an implied power to the same effect. In 24 Cyc. 843, a landing is defined to be "A bank or wharf to or from which persons may go from or to some vessel in the contiguous water; a place on a river or other navigable water for lading or unlading of goods, or for the reception and delivery of passengers; a place where a vessel can be moored or discharged; a wharfage place for crafts."
In Waite v. O'Neill, 76 Fed. 417, in an opinion rendered in the Circuit Court of Appeals, by LURTON, J., a landing, it is said, "implies a place where vessels can be moored and loaded or discharged"; and the mooring of a vessel means something more than the casting of anchor in a roadstead or along side of a river bank. Similar language was before the Supreme Court of Pennsylvania for construction, in Reighard v. Flinn, 194 Pa. 352, when that Court was called upon to construe the term "public landing," as used in an Act of the Pennsylvania Legislature of 1836, and it was held that the words "public landing" must be construed to comprehend a wharf. See also cases cited in "Wordsand Phrases," Vol. 5, page 3988. In view of these holdings, even in the absence of express legislative authority for the construction of a wharf, designated as such by name, it would have to be held that there was the implied power conferred upon the County Commissioners to erect such a *Page 389 
structure under the language of sections 105 and 106 of Article 25.
In the brief of the appellant, a suggestion was made that the provisions of the Public General Law would not apply because of the Local Laws of Anne Arundel County, as contained in the Act of 1898, Chapter 531. But no attempt was made in the brief to indicate wherein there was any conflict between the local and general laws. Chapter 531 of the Acts of 1898, was an Act dealing with the question of public roads in Anne Arundel county, and providing the procedure to be followed for the opening, repairing or closing of any such public road, and an examination of this Act has failed to disclose any conflict whatever between that Act and the General Laws of the State. Unless there be a conflict the general law with regard to County Commissioners, and their powers and duties, is not repealed by the enactment of a local law.Baltimore County v. Baker, 44 Md. 9.
Section 105 of Article 25 confers power upon the County Commissioners to establish public landings "in all cases where the public convenience requires it." The determination of what the public convenience does or does not require is thus a matter which is left to the judgment of the County Commissioners, and is a matter to be determined by them in favor of, or adversely to, an application in the exercise of their discretion. It is not a matter with which the Courts have anything to do, or can in any manner control, unless it be made apparent that the action of the County Commissioners was a purely arbitrary act, or induced by corruption or fraud. No allegation in the bill in this case goes to that extent, and the order of the Circuit Court for Anne Arundel County will therefore be affirmed.
Order affirmed and bill dismissed, costs above and below to bepaid by the appellants. *Page 390