FRANK E. CRAWFORD ET AL. *v.*
GEORGE F. OBRECHT
[No. 80, October Term, 1937]

*Decided February 11th, 1937.*

The cause was argued before BOND, C. J., PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Hilary W. Gans* and *Joseph T. Brennan,* with whom were *Brown & Brune* on the brief, for the appellants.

*Rignal W. Baldwin, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Frank E. Crawford, Fred F. Keen, and Alfred G. Mulcahy, copartners, who traded as Crawford, Keen & Co., brought an action against George F. Obrecht in his individual capacity and as trading under the name and style of P. Fred Obrecht & Son, to recover for an alleged breach of a contract for the sale of goods. The declaration is in one count, which avers that on November 15th, 1933, the defendant purchased of the plaintiffs 500 tons of Argentine Feed Flour at the price of $26 per ton, to be shipped from Buenos Aires, Argentine, on or about December 14th, 1933, direct to the defendant in Baltimore, upon

payment by the defendant of the purchase price by the defendant's opening of an irrevocable letter of credit in Buenos Aires with a bank there, to be designated by the defendant, for the use of the plaintiffs, in the full amount of the agreed purchase price. The declaration further alleges that, while the plaintiffs were at all times ready, willing, and able to deliver the flour to the defendant in accordance with the terms of the contract, the defendant wrongfully and without just cause repudiated the contract, and, although demand was made, the defendant neglected and refused to accept delivery of any of the flour or to pay for the same as provided in the contract. The defendant demanded the particulars of the contract. After an amended bill of particulars had been filed, a demurrer was interposed to the declaration. The court sustained the demurrer, and the plaintiffs refused to amend and submitted to a judgment which was entered for the defendant for costs. The appeal was then taken.

A bill of particulars to a declaration, when properly called for and filed in response to the call, becomes a part of the declaration, and the parties are restricted in their evidence to the claim thus presented, but it is not so far a part of the declaration as to cure any substantial defect in it that would be bad on general demurrer, although it may serve to show an infirmity in the claim, and so make the declaration open to a demurrer which, in the absence of a bill of particulars, would not have been so exposed. 2 *Poe's Pl. & Pr.* secs. 116, 117, vol. 1, sec. 136; *Noel Construction Co. v. Armored Concrete Construction Co.,* 120 Md. 237, 87 A. 1049; *Nelson v. Close,* 147 Md. 214, 216, 127 A. 751.

The elaborate bill of particulars on this record is for the purpose of presenting the claim of the plaintiffs in its entirety in order that there may be determined whether an enforceable contract was made by the parties.

The bill of particulars shows that certain written communications and documents passed between the parties, and the question is whether these, when read together, are sufficient to comply with the requirements of the Statute

of Frauds, as found in section 25 of article 83 of the Code, which provides, so far as the pending appeal is concerned, that a contract to sell or a sale of any goods of the value of $50 or more shall not be enforceable by an action unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

The defendant sent, on July 26th, 1933, by letter to the office of the plaintiffs at Buenos Aires a sample of feed flour with the request that the plaintiffs give them a price on 500 tons per month of the flour delivered in Baltimore. The plaintiffs replied by post, under date of September 13th, advising the defendants that they could supply the flour desired and quoted price and terms. The parties then entered into oral negotiations that were all through plaintiffs' New York office, which resulted in a letter from the plaintiffs to the defendant under date of November 13th. In this letter the plaintiffs wrote the defendant that they, in consequence of the discussion between them, had cabled their office in Buenos Aires what would be necessary to make the quality of flour desired conform to the customs rulings of the port of entry at Baltimore and had requested that an offer be cabled. The letter stated the method and terms under which the plaintiffs did business in the United States, and, particularly, advised the defendant that the terms of payment were on the basis of a letter of credit, which was to be opened by cable in Buenos Aires in favor of the office of the plaintiffs in that city.

As a result of their cables with their office in the Argentine, the plaintiffs forwarded by special delivery, on November 14th, a letter which made the following firm offer, subject to immediate acceptance: "About 500 tons of 2240 pounds each Argentine Feed Flour, usual good quality, guaranteed to contain about one per cent (1%) fibre, at $26.00 per ton of 2240 pounds, c. i. f. Baltimore, for shipment from the Argentine on the s. s. 'West Selene' or substitute, scheduled to sail about the 14th of December, on usual terms of sight letter of credit to be opened

by cable, basis gross shipping weights, packed in used single bags, about 140 pounds each."

The letter informed the prospective buyer that the quantity named was all that was available for the month of December, and that, due to the condition of the foreign exchange market, it was important for the defendant to act promptly, and that an acceptance should be wired the plaintiffs the next morning so that it might be cabled to Buenos Aires. The bill of particulars then states that, after the receipt of the letter, the defendant, on November 15th, the next day, by telephone informed the plaintiffs that the offer contained in the letter of the preceding day was accepted in full, and that the defendant agreed to purchase the Argentine feed flour under all the terms and conditions as set forth in the letter. The contract was made by this acceptance, and the question is whether there is a signed writing in compliance with the Statute of Frauds.

On the day of this acceptance, the plaintiffs forwarded to the defendant a contract in duplicate to cover the sale. It was signed by the plaintiffs and they requested that, after the defendant had signed the unsigned copy, he would return it to the plaintiffs for their records. The contract embodied the terms of the contract set out in the written offer, with such additional supplementary details as did not alter the terms. The term "about 500 tons" in the offer was made certain by being limited to a variation of "5% more or less." On November 15th, the plaintiffs wrote to the defendant with reference to other negotiations, and on the 20th the plaintiffs wrote in reference to the contract of November 15th. The occasion for this letter was the receipt of a cable from Buenos Aires inquiring if it would be satisfactory to the defendant if the flour should be shipped in part on the steamship Tercero, which was scheduled to sail a few days later than the West Selene. The plaintiffs desired to know if this change in the shipping instructions would be acceptable to the defendant, and they concluded the communication with the request that the defendant would sign and send

them a duplicate contract, together with copy of the letter of credit, in order that the plaintiffs might complete their records of the transaction. Receiving no reply, the plaintiffs telegraphed the defendant on November 22nd, 1933: "Referring to our letter twentieth advise by wire bank Buenos Aires with whom credit opened also if satisfactory ship part Tercero. Must have reply this afternoon."

In response to this telegram, the defendant sent, and the plaintiffs received, on November 22nd, 1933, this telegram:

"CG                    Baltimore, Md. 1225P.
                            "Nov. 22, 1933.

"Crawford, Keen and Co.
   "76 Beaver St. N.Y.K.

"Divided December shipment satisfactory Bank National Central Bank Baltimore. P. Fred Obrecht and Son.
            "1251 P."

The plaintiffs wrote the defendant in acknowledgment of the delivery of the telegram, consenting to the division of the December shipment of flour, and advising the plaintiffs of the bank in Baltimore through which the letter of credit required under the terms of the contract had been opened. The plaintiffs wrote the defendant on November 24th, stating that the signed duplicate contract of November 15th, and a copy of the letter of credit, which the defendant had stated had been opened with the National Central Bank of Baltimore, had not been received, and that the plaintiffs would appreciate their being forwarded, as they must have them to complete their records of the transaction. On November 27th, the plaintiffs called the office of the defendant and requested the defendant to wire them the name of the correspondent at Buenos Aires of the National Central Bank, and did not get the information. The plaintiffs then telegraphed the National Central Bank that P. Obrecht & Son had advised them that a credit of about $13,000 had been opened at Buenos Aires for the benefit of the plaintiffs and requested the name of the bank's correspondent in Buenos Aires to whom the credit had been cabled. The

next day the bank telegraphed that defendant had referred to the Buenos Aires matter but that no definite arrangement had been made for the letter of credit. The plaintiffs then wrote the bank and explained the necessity for immediate action, and gave the name and address of the plaintiffs' house in the Argentine, and gave the bank references in Baltimore and New York if information about the plaintiffs should be desired. On the same day, the plaintiffs telegraphed and wrote the defendant in reference to a pending negotiation, and to the situation with reference to the non-return of the duplicate contract and to the necessity for funds to be cabled immediately.

On December 1st, the defendant telegraphed the plaintiffs in reply to the last preceding communications:

"We were previously assured now having difficulty arranging letter of credit is there no other way to bring goods in.                   "P. Fred Obrecht and Son."

The plaintiffs immediately replied there was no other way. The bill of particulars further states that there were other letters and conversations by telephone between the parties, in which the plaintiffs were insisting upon a compliance with the terms of the contract, and the defendant was excusing his default by his inability to obtain the necessary funds to be transmitted to Buenos Aires. It will serve no useful purpose to set forth the efforts made by the plaintiffs to have the defendant comply; and the defendant's own endeavor to procure the necessary credit.

After the defendant could not obtain the necessary funds, he took the position, in a telegram to the plaintiffs of December 7th, that he had not signed the written form of contract because it did not cover the exact terms of the purchase, but the bill of particulars shows that the defendant continued his efforts to obtain the credit, and, notwithstanding his representations that he had obtained the letter of credit, did not do so, and, finally, after being notified by the plaintiffs that they would proceed, the defendant wrote the plaintiffs, on January 4th, 1934, that the purchase was contingent on his ability to place

an irrevocable letter of credit in the hands of a bank at Buenos Aires. He wrote: "Your contract clearly states that it was to be signed immediately upon the opening of a letter of credit. The contract was never signed and returned completed because we were unable to meet the terms of the contract as you knew, and I cannot understand why you should consider it a purchase unless letter of credit was delivered at Buenos Aires."

On the receipt of this letter the plaintiffs made a formal demand that the controversy be submitted to immediate arbitration for settlement, and notified the defendant, if he should not accept arbitration by the time specified, the matter would be placed in the hands of attorneys for action.

It is obvious from the bill of particulars that the defendant's failure to obtain the letter of credit as contemplated was because of his financial situation and lack of credit, and that the terms of the written contract, "Buyers to open promptly on signing of the contract a banker's sight irrevocable letter of credit for the value of the merchandise in favor of the sellers in Buenos Aires," did not mean that the contract was not binding until the buyer had complied with this provision. A failure to comply was, of course, a breach of the contract by the buyer. So, there can be no doubt that the contract in writing was in accordance with the terms of the contract as set forth in the letters of November 13th and 14th.

From this abridgment of the bill of particulars, it appears that the oral contract between the parties was entered into after the defendant's acceptance had been telephoned to the plaintiff, but that its incorporation into a written formal contract was contemplated by the parties. It is seen that this contract was prepared, signed by the plaintiffs as sellers, and forwarded in duplicate to the defendant, who received and retained the document. The contents of this paper, which was signed by the plaintiffs, satisfied all the requirements of the Statute of Frauds. Since the contract was executory, it was not enforceable against the defendant until some note or mem-

orandum in writing of the contract of sale had been signed by the defendant as the party to be charged or by his agent in that behalf. "As the purpose of the statute," in the words of Williston, "is to require a formality of proof in order to make a contract enforceable, not to impose a new rule of law as to what constitutes a valid contract, it is immaterial with what purpose the requirement of the statute is fulfilled." *Williston on Sales* (2nd Ed.) sec. 106. The memorandum need not be contained in one writing, nor, if there are several documents, need they be physically attached to one another, if their contents show a connection with the bargain sought to be enforced. If all the papers are connected so as to constitute a writing which has been authenticated as a whole by the signature to a separate part, the statute is gratified so far as the signer is concerned. The memorandum and its constituent parts may be in any form. It may be a well prepared written contract, but it may also be, in whole or in part, in the form of a letter or letters or of a telegram.

So, here there is a plain written document which contains all the terms of the contract, is signed by the seller and complies with all the requirements of the statute, except that it has not been signed by the other contracting party, the buyer, in whose possession for signature it had been put. Before the time for shipment of the flour, the subject-matter of the contract, had arrived, and with the right of the parties to modify by agreement any term of the contract, the seller proposed in writing to the buyer that a term of the contract be modified, so that, instead of all of the flour being required to be loaded by a certain day in a particular vessel, the shipment would be divided in quantity and in time and be carried partly by two vessels which would sail on different dates. The seller submitted this modification of the original contract in a letter to the buyer under date of November 15th. The language used is so clear and explicit that its reference to the original contract is indisputable and parol evidence is, therefore, wholly unnecessary to

show that the letter relates to the same transaction. If, therefore, the proposal be agreed to by the buyer, the complete and modified articles of sale would be the original contract and the letter. The agreement of the buyer to the modification proposed was expressed in a third paper writing, a telegram from the buyer to the seller. Instead of expressing his assent either by an alteration of the original contract, so as to conform to the modified terms, and signing, or by writing, and signing his acceptance on the letter received, or by writing and signing a writing to evidence his consent, the agreement of the buyer to the modification proposed was expressed in a fourth paper writing addressed, over his signature or in his name by his agent for that purpose, to the seller, and delivered by the buyer in the form of the telegram, which needed no parol evidence to identify it as a separate but integral document, which had been so signed by the buyer as the person to be charged under a contract whose complete and final obligations were contained in separate but integrated written parts. *Drury v. Young*, 58 Md. 546; *Kahn v. Carl Schoen Silk Corp.*, 147 Md. 516, 128 A. 359; *Reckford Mfg. Co. v. Massey*, 151 Md. 348, 351, 133 A. 836; *Browne on Statute of Frauds* (5th Ed.) secs. 346b-349. It is only when these constituent and commonly referable parts are assembled and read together that the actual contract between the parties is ascertained.

The court is, accordingly, of the opinion that the declaration, when read in connection with the bill of particulars, states a cause of action, and that the demurrer should have been overruled.

*Judgment reversed, with costs to the appellant, and case remanded.*