ALFRED W. GAVER *v.* COUNTY COMMISSIONERS
OF FREDERICK COUNTY

[No. 46, October Term, 1938.]

640

*Decided January 11th, 1939.*

The cause was submitted on briefs to BOND, C. J., OF-
FUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*David C. Winebrenner, 3rd,* for the appellant.

*Edward S. Delaplaine, D. Princeton Buckey,* and *Alban
M. Wood,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Alfred W. Gaver has since June 1st, 1933, held the of-
fice of supervisor of assessments for Frederick County.
The office was created by chapter 226, Acts of 1929,
amended by chapter 595 of the Acts of 1933, sec. 170
(Code [Supp. 1935] art. 81, sec. 170), which fixes the
salary payable to the incumbent thereof at $1,584 per an-

num. The treasurer of Frederick County over that period paid to Gaver as salary $1,800 per annum.

On July 30th, 1937, the Board of County Commissioners of Frederick County brought this action against Gaver to recover the difference between the amount actually paid to him by the treasurer and the amount payable to him under the statute. The declaration contained the six common counts and a special count alleging the facts stated above, a demand and refusal to pay. To that declaration, the defendant pleaded (1) the general issue, (2) limitations, and (3) set off. The plaintiff joined issue on the general issue plea, traversed the plea of limitations, and demanded the particulars of the plea of set off. The defendant joined issue on the traverse and filed a bill of particulars in which he stated that plaintiff was indebted to him for services rendered in the following amounts: (a) $400 for issuing and mailing building permits as the agent of the plaintiff and at its request, (b) $520.83 for notifying, at plaintiff's request and as its agent, property owners, who had erected new buildings, to appear before said plaintiff in order that said buildings might be assessed for taxation, and (c) $120 for transportation and other incidental expenses incurred in the administration of his official duties in making trips from Frederick to the offices of the State Tax Commission in Baltimore, which charges he thus recapitulates:

"To writing building permits from June 1, 1933, to July 31, 1937, 50 months @ $8.00 per month ........................................................$   400.00

To sending notices to property owners who had erected new buildings advising them to appear for assessment, 4 years 2 months @ $125.00 per year........................................................   520.83

To expenses for making 24 official trips from Frederick, Maryland, to the offices of the State Tax Commission, Baltimore, Maryland, @ $5.00 per trip........................................................   120.00

Total ........................................................$1,040.83"

To the plea as particularized and to the bill of particulars, plaintiff demurred. The demurrer was sustained and the case tried before the court, which returned a verdict of $864 for the plaintiff. From the judgment on that verdict, this appeal was taken.

There are no exceptions, so that the only question submitted is whether defendant in his plea of set off as particularized stated a cause of action.

Technically the sufficiency of a bill of particulars should be tested by exception and not by demurrer. 2 *Poe, Pl. & Pr.*, sec. 119. When properly demanded, furnished, and accepted, a bill of particulars becomes a part of the declaration (*Ibid*, sec. 116), and, if the particularization exposes some fatal infirmity in the claim made in the declaration, a demurrer to the declaration as particularized will lie. *Ibid; Noel Construction Co. v. Armored Construction Co.*, 120 Md. 237, 87 A. 1049; *Nelson v. Close*, 147 Md. 214, 216, 127 A. 751; *Roth v. Baltimore Trust Co.*, 161 Md. 340, 343, 158 A. 32; *Cleaves v. Sharp & Dohme, Inc.*, 166 Md. 546, 548, 171 A. 374; *Winslow v. Atz*, 168 Md. 230, 241, 177 A. 272; *Crawford v. Obrecht*, 171 Md. 562, 564, 189 A. 809. So, while a bill of particulars can never make a bad declaration good, it may make a good declaration bad, if the facts which it discloses as the basis of the declaration do not constitute a cause of action, or are otherwise inconsistent with the plaintiff's right to recover. *Crawford v. Obrecht, supra;* 2 *Poe, Pl. & Pr.*, sec. 116.

The demurrer to the bill of particulars will be disregarded, since any objection to it because it was not sufficiently specific or definite should have been by exception.

The appellant in effect concedes that the plaintiff's declaration states a cause of action. In view of that concession, it becomes unnecessary to consider whether a municipality which innocently, through a mistake of law, paid to its officer or agent, who was equally innocent and mistaken, salary in excess of a statutory limit, can recover the excess. 46 *C. J.* 1017; *Mayor, etc. of Niles v.*

*Muzzy,* 33 Mich. 61; *Sidway v. South Park Commrs.,* 120 Ill. 496, 11 N. E. 852, 853; *Converse v. United States,* 21 How. 463, 16 L. Ed. 192; *McQuillen, Munic. Corp.,* secs. 534, 546. So the sole question to be decided is whether the plea of set off as particularized states a cause of action.

The office of supervisor of assessments was created by chapter 226, Acts 1929, section 167, which in part provides: "The Supervisors shall be furnished with an office at the county seat by the County Commissioners of each county, and the Supervisor of Assessments for Baltimore City shall likewise be furnished an office in Baltimore City by the Mayor and City Council; and they shall be allowed such clerical help and expense as the County Commissioners and the Mayor and City Council of Baltimore shall respectively determine. They shall confer frequently with the State Tax Commission, submitting questions for determination to that Commission and shall receive and carry out instructions given by the Commission or the Chief Supervisor of Assessments appointed by the Commission for their guidance in supervising the valuation and assessment of real and personal property; they shall likewise keep constantly informed of the method of work pursued by other Supervisors of Assessments." Code (Supp. 1935), art. 81, sec. 167.

The same act, as amended by chapter 595, Acts of 1933, section 168 (Code [Supp. 1935], art. 81, sec. 168), provides in part: "The Supervisors of Assessments shall have general supervision over the assessment of all property in the County or City for which they are appointed. They shall have power and are charged with the duty, to recommend assessments to the County Commissioners or other authority as required by law, and shall be charged with the duty and shall use all due diligence in listing escaped and/or new property and recommending a proper assessment thereon to the boards of County Commissioners or other authority and shall cooperate with the respective boards of County Commissioners or other assessing authorities in obtaining fair and equitable assess-

ments." The statute then goes on to state in some detail the manner in which incumbents of the office shall administer its duties. *Ibid.*

For convenience, the claims described in the bill of particulars of the plea of set-off may be considered as three separate independent items, Item (1) is for services incident to the issuance of building permits, Item (2) for services rendered in notifying the owners of new buildings to appear before the County Commissioners and be heard in reference to the assessment of such buildings for taxation, and Item (3) for expenses incurred as the result of official visits to the office of the State Tax Commission.

It appears from a comparison of the statute and the bill of particulars, that the services described in items two and three are such as are pertinent to and within the scope of the duties imposed by the statute upon a supervisor of assessments for a county. For instance, the statute in express and explicit terms charges such an official with the duty of discovering and listing escaped and new property, requires him to use all "due diligence" in the performance of that duty, and requires him to cooperate with the County Commissioners in obtaining fair and equitable assessments. It also, in terms equally explicit, requires him to "confer frequently with the State Tax Commission."

If the County Commissioners did therefore request him to notify persons owning new buildings to appear before them to have such buildings assessed for taxation, they asked him to do no more than to cooperate with them in securing information which it was necessary for him to secure in some way, and from some source, to enable him to adequately perform his duties. The statute of course did not require him to send the notices, as that work should ordinarily have been done by the Board itself. But his duty was to secure information necessary to enable him to recommend a proper assessment to the County Commissioners, and the salary fixed by the statute was payable to him for the performance of that duty.

Compliance with the request of the Commissioners aided him in securing conveniently, quickly, and cheaply that information, and was in aid of the duties of his office for performance of which his salary was fixed as complete compensation. He had therefore no more right to charge the Commissioners for that service than for the service of recommending an assessment. The fact that the Commissioners permitted him, or even that they requested him, to use the power given by the statute to them, for the purpose of securing for himself information which he needed to properly administer his office, raised no presumption that they agreed to pay him for exercising the privilege.

In *McQuillen, Munic. Corp.*, sec. 544, it is said: "Where an officer performs duties imposed by law he is entitled to the compensation therefor fixed by law and no other. He is not entitled to extra compensation for services performed in the line of his official duty. The fact that the salary or compensation may be recognized as inadequate remuneration for the services exacted and actually performed does not change the rule. And the principle is the same although his duties are greatly increased. Courts everywhere recognize the necessity of protecting the public funds, and hence, they will usually enforce the rule against permitting extra compensation either directly or indirectly, with appropriate strictness. Extra compensation to the incumbent of an office or position in the municipal service cannot be based on a promise, contract, custom or usage, increase of duties, services pertaining to the duties of the office or employment, doubtful implication or indirect methods, although provided by statute or ordinance, or charter provision. Laws seldom prescribe with much detail and particularity the duties relating to public office, it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and if these distinctions are much favored by the courts, it may lead to great abuse. 'Public policy requires that courts should not indulge in refinements too nicely drawn in the construction'

of law relating to this matter, to the end that a particular service may be classed as non-official or extra official."

The basic test implicit in that rule is whether the services on which the claim rests were within the scope of duties imposed by the statute which fixed the compensation payable for the performance thereof. Since the statute in this case required appellant to discover and list new property, and since the notice required the owners of new buildings to appear before the Commissioners that proper inquiry might be made as to the equitable assessment of such property, and since any such inquiry would help appellant to decide what would be an equitable and fair assessment, the services rendered in mailing the notices were within the scope of the duties of the office, for which the statutory salary must be regarded as complete compensation. 46 *C. J.* 1017, note 61.

Expenses incurred in making visits to the State Tax Commission can under no possible theory be charged against the Commissioners. The statute required him to make the visits as a part of the duties of his office. The County Commissioners could have allowed him for such expenses, Code, art. 81, sec. 167 (Supp. 1935), but, in the absence of appropriate allegations, it will be assumed that no allowance for such expenses was made, and that during the period of four years in which they were incurred he made no demand for any such allowance, and not then until after this suit had been filed.

A different question is presented by the claim for the services described in Item one. While notifying the owners of new buildings to appear and have their property listed for taxation, and attending the State Tax Commission may properly be regarded as within the scope of the duties of a supervisor of assessments, the preparation and transmission of building permits has no discoverable relation to such duties.

The duty of issuing such permits is placed by statute upon the Board of County Commissioners of Frederick County (Code. Pub. Loc. Laws, art. 11, sec. 140). That Board has charge and control of all county property, and

is empowered to appoint such officers, agents and servants, as may be required for county purposes (Code [Supp. 1935], art. 25, sec. 1; *Tasker v. Garrett County*, 82 Md. 150, 153, 33 A. 407), and, while its powers are statutory and limited, it has, nevertheless, such implied powers as are necessary to enable it to perform duties expressly laid upon it by the Legislature. 15 *C. J.* 457; *Chaney v. Anne Arundel County*, 119 Md. 385, 86 A. 1039; *Maxa v. County Commissioners*, 158 Md. 229, 148 A. 214; *Huffman v. State Roads Commn.*, 152 Md. 566, 578, 137 A. 358. It has been said that such a Board necessarily possesses power commensurate with its public trusts and duties, 15 *C. J.* 457, note 64 *et seq.*

When therefore the Board was charged with the duty of issuing building permits, it was necessarily given at the same time power to employ such servants and agents as might be needed to perform that duty, and to pay to such persons reasonable compensation for services rendered by them. As a 'corporation the Board can only act through agents and servants. Since it is a governmental agency created to administer the county government, it is given the power to employ such agents and servants as it may need to perform that duty, and by necessary implication it is given the power to levy taxes to pay the persons so employed, and, where their compensation is not fixed by statute, it is authorized to allow and pay to them reasonable compensation for their services. But where a municipality, acting within the scope of its delegated power, employs an agent to do work, but fixes no compensation therefor, and the agent renders the services, which the municipality accepts, the question often arises, as it does here, of the right of the agent to recover against the municipality on an implied assumpsit compensation for his labor. There is a decided split of authority on the question, but where the agent acts as an officer, the weight of authority supports the view that in such cases there can be no recovery (46 *C. J.* 1014; note, 20 *Ann. Cas.* 148; 22 *R. C. L.* 531, *McQuillen, Mun. Corp.*, sec. 534), for it is presumed that unless the statute which creates

the office fixes the emoluments or salary thereof, services rendered by the incumbent are gratuitous. But even in the case of officers, that rule is not universally accepted, nor is it without exception (Note, 20 *Ann. Cas.* 148), and ordinarily it is not applied to a mere employee or agent with the same strictness as to an officer. For it is ordinarily presumed that, when such a corporation requests and accepts services of a mere employee, rendered in the performance of a lawful duty, that it is in honesty and good faith bound to pay reasonable compensation therefor. There is nothing in the nature of a municipal corporation to exempt it from the application of the doctrine of estoppel as it would apply to a natural person or a business corporation.

That principle is very forcibly stated in *San Francisco Gas Co. v. San Francisco*, 9 Cal. 453, 469-472, in this language: "The proposition of the respondent is that a municipal corporation can incur no liabilities otherwise than by ordinance. The position, in its full extent, is not tenable. Under some circumstances, a municipal corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the property or labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations. This is as well established by the authorities as any principle of law can be. * * * The reasoning of the court, in this case, is applicable to the facts of the case at bar. The defendant has received the benefit of the plaintiff's labor and materials for over a year and a half, and it ill comports with fair dealing that it should now seek to exonerate itself from liability, and the law will fail to effect its true end, if the defence interposed can prevail. The position contended for by the respondent, it is believed, is asserted in this State for the first time. The reports in other states are full of adjudged cases where actions upon implied contracts have been sustained

against municipal corporations. They have been argued by able and distinguished counsel, and decided by eminent Judges, and the distinction has never been made between the liability of a private corporation and a municipal corporation, under circumstances analogous to those presented in the case at bar. * * * Where the contract is executory, the corporation cannot be held bound unless the contract is made in pursuance of the provisions of its charter; but where the contract has been executed, and the corporation has enjoyed the benefit of the consideration, an implied assumpsit arises against it." See *Bohart v. Anderson*, 24 Okl. 82, 103 P. 742; *Kinnie v. Waverly*, 42 Iowa 486; *McQuillen, Munic. Corp.*, 1937 Cum. Suppl., sec. 534, cases collected note 38, *McQuillen, Mun. Corp.*, sec. 2652; *Ibid*, sec. 534, note 39.

The employment in issue here has none of the *indicia* or characteristics of an office. The incumbent has no definite tenure, no vested right to the employment, his duties involved no exercise of the state's sovereignty, but were merely clerical, nor was he required to take an oath of office. *McQuillen, Mun. Corp.*, sec. 437.

The appellee by its demurrer concedes that the appellant, acting for and on its behalf and at its request, issued and mailed a large number of building permits which the appellee was under a duty to issue, that he acted with the "knowledge, consent and approval of" the appellee, and as "their agent" for the purpose, "and at their request". The work was for a county purpose, they were authorized by statute to employ agents for county purposes, they were under a duty to have the work done, it could only be done by agents, so the appellant was lawfully employed for a lawful purpose, and the appellee was under the same compulsion to pay him reasonable compensation for his services that it would have been under to pay any other clerk, laborer, or employee whom it employed to do county work. If the Board employed a laborer to clean a ditch, or a carpenter to repair a roof on a county building, or a mechanic to repair a county automobile, it could hardly be contended that it was under no obligation to pay

for the service, or that the law presumed that it was gratuitous. Nor was appellant's right to compensation affected by the fact that he was in another relation an officer, since the work referred to in Item one had no relation to the duties of his office. 46 *C. J.* 1017; *Converse v. United States,* 21 How. 463, 16 L. Ed. 192; *Mayor, etc. of Niles v. Muzzy,* 33 Mich. 61. Since the plea as particularized did in that item set out a valid cause of action, the demurrer to it should have been overruled (*Poe, Pl. & Pr., secs.* 559, 562, 586, 587), and for that error the judgment must be reversed.

*Judgment reversed, with costs.*