# The Union Banking Company of Baltimore City vs. John S. Gittings.

*Admissibility of the declarations of an Agent—Evidence of Authority of Agent—Where Notice to produce a Lost paper is unnecessary—Sufficiency of Proof of its Loss—Question for the determination of the Court—Prayer too indefinite—Effect of the first, second and fourth Sections of the Statute of Frauds, taken together, so far as they apply to Parol Leases not Exceeding three years from the Making thereof—Section four of the Statute of Frauds, not applicable to Executed parol contracts of Lease for not more than three years—When an Action will lie on a Parol agreement for a Lease not to Exceed three years.*

When an agent is acting within the scope of his authority, his declarations accompanying his acts, being part of the *res gestæ*, are admissible. But in an action for rent, the facts that S. was the cashier of the defendant (a Banking Company) and had negotiated for the renting of the premises, are not evidence of authority to bind the defendant, by remarks made to the agent of the plaintiff as to the purpose for which a particular room was rented, or the terms upon which the previous renting had been made.

Notice to produce a paper, before giving secondary evidence of its contents, is unnecessary, where such notice would be nugatory.

And such notice is also unnecessary where the opposite party or his attorney admits, or swears, that the paper is not in the possession or control of either of them, and therefore cannot be produced.

Case where the proof of loss of a paper was deemed sufficient to warrant the introduction of secondary evidence of its contents.

The question, whether the loss of the paper is sufficiently proved, to admit secondary evidence of its contents, is for the Court to determine and not the jury.

The degree of diligence exacted in the search for a lost paper depends, in a great measure, on its importance.

In an action by a landlord for a month's rent, where it was essential to the plaintiff's right to recover, that the tenancy should be a yearly one, it was HELD:

That a prayer on the part of the plaintiff instructing the jury that if they found that the defendant became tenant of the premises mentioned *for one year at the annual rent of* $1800.00 *payable monthly, then their verdict should be for the plaintiff for* $150.00—without referring to the commencement of the term or designating for what month—was bad, being too indefinite.

The effect of the first, second and fourth sections of the *Statute of Frauds*, taken together, so far as they apply to parol leases, not exceeding three years from the making thereof, is, that the leases are valid, and whatever remedy can be had upon them in *their character of leases*, may be resorted to; but they do not confer the right to sue the lessee for damages for not taking possession.

Such leases are to be considered as excepted by the *second section* of the Statute from the operation of the *fourth*. And the exception is not confined to leases which commence from the time of the making, but extends to others, provided the term·does not exceed three years from their making.

And notwithstanding an action will not lie on a parol agreement for such lease, before entry thereunder by the lessee, yet, when a tenancy has actually been created by entry and payment of rent, or by entry alone, an action will lie, and the terms of the tenancy may be proved by parol.

And if the lessee has once entered and taken possession as tenant, he will be deemed to hold during the continuance of the term, and until it be legally determined, whether he continue to occupy the premises or not.

APPEAL from the Circuit Court for Howard County.

This was an action for rent brought by the appellee against the appellant.

*First Exception.*—At the trial of this cause the plaintiff, to maintain the issues on its part joined, testified as a witness himself, as follows: I am the owner of the property on the southeast corner of South and Second streets, in Baltimore city; sometime in July, 1873, Mr. Savin, the cashier of the defendant, came and said he would like to

rent the building for the Union Banking Co.; afterwards he came again accompanied by Mr. Philip Gover, the President of the defendant, and agreed to rent the premises at $1500 per year—the rent to be paid monthly and to begin when they moved in, which was to be as soon as convenient—not of course upon the day the contract was made, but within a few days; they took possession I think on the 16th of July, 1873; after a month or two they came and said that they had not room enough and wanted to rent the upper floor, which had only a side entrance; I agreed to put in an iron stairway and let them have the upper room, and then the rent was to be $1800, to begin from the time of the alteration; the stairway was put in and the increased rent was paid; sometime afterwards Mr. Savin applied for a reduction of the rent; I said I had gone to considerable expense and would make no change until the end of the year; shortly afterwards a boy brought a notice to me, but I never read it and treated it with contempt; they paid up the rent until January 1st, 1874, when they left the building and sent me the key which I declined to accept, and afterwards brought suits for the monthly rents as they became due.

There was no written contract, although I had one drawn up and sent to them, but it was not signed. (The plaintiff's counsel here called upon the defendant's counsel to produce this unsigned written contract, according to a notice to that effect previously given, but the defendant's counsel stated that the same was not in their possession nor in the possession of the defendant, and that the officers of the defendant were under the belief that it was returned to the plaintiff by the messenger who brought it.)  The plaintiff then testified that said paper was the ordinary form of printed lease, such as he generally used; that he sent it to the defendant by his clerk, Mr. Saumering, and that it was never returned to him: he never rented a first-class house like this by the month;

would not do such a thing; never knew of such a thing being done, and especially on a banking house.

The plaintiff further proved by Philip Gover, that he was the President of the defendant for about five months prior to October or November, 1873; Mr. Savin, who was the cashier, and myself, went to Mr. Gittings to rent the building sometime in June or July, 1873; I think we had two interviews; Mr. Savin did most of the talking; we agreed to rent the lower room for $1500 per year, the rent to be paid monthly in advance, and to begin from the time we took possession, which was to be as soon after the contract as convenient; there was no time named for taking possession, it was to be as soon as it could be fixed up; the contract was entirely a verbal one, although a written contract was drawn up it was not signed; after we had been there a month or two we wanted more room and proposed to rent the upper office if Mr. Gittings would put in an inside stairway, he agreed to do this, and we agreed to take the office at $300 a year; I cannot say exactly when this was, or at what time we took possession; the stairway however was put in and we occupied the two offices after that; the three hundred dollars was to be added to the other rent; nothing was said specifically about the merging of one contract in the other, but my understanding was, that from the date of the improvement until the end of the year of original renting the additional rent was to be paid.

The plaintiff further proved by Mr. Saumering that he was employed by the plaintiff to collect his rents and look after his repairs; witness had an iron stairway put in the building occupied by the defendant about September, 1873, at Mr. Gittings' request; the plaintiff then proposed to prove by this witness, that while engaged in putting up the stairway, Mr. Savin urged him to push up the work as they wanted the room as a meeting room for the Directors; to the admission of this testimony the defendant objected, but the Court, (MILLER and HAMMOND, J.,) overruled the ob-

jection, and permitted the testimony to be given to the jury. The defendant excepted.

*Second Exception.*—The plaintiff further to maintain the issues joined on his part, proved by the same witness Saumering, that sometime after the defendant was in possession of the premises, Mr. Gittings gave him a written contract which he took to Mr. Savin for him to look at, but Mr. Savin made some objection to the water rent and refused to sign it, made no other objection, said he would see Mr. Gittings, witness left the paper with Mr. Savin.

The defendant further proved by F. A. Savin, that he is the cashier of the defendant, and was at the time the premises were rented from Mr. Gittings; witness made the negotiation; Mr. Gover was present, but witness did most of the talking; the contract was to take the building at $125 per month, no specified time was agreed upon and the building was not rented for a year or by the year; I told Mr. Gittings that if the place suited us, it might be to our interest to become permanent tenants, but I studiously avoided renting the place for any specified length of time, because we were a young institution and I did not know whether we could afford to pay that amount of rent; I had two interviews with Mr. Gittings, they must have been in June; I know we moved in during that month, because I paid a portion of a month's rent up to the 1st of July, at the request of Mr. Gittings' clerk, so as to make the rent payable on the first of the month; after we had been there a month or two, I saw Mr. Gittings, and agreed to take the upstairs room at $25 per month additional—no specified time was named; we moved from the premises on the 31st day of December, 1873, and paid our rent up to that time; I had the notice of our intention to quit, dated Nov. 30th, 1873, served on Mr. Gittings on that day.

There was no written contract signed in regard to the renting, but Mr. Saumering, Mr. Gittings' clerk, brought

me a written contract shortly after we took possession, which he said Mr. Gittings wanted me to sign ; I read it and told him I would sign no such paper, and I believe gave it back to him ; at any rate I have never been able to find it since, although I have examined the papers of the defendant since this suit to see if I could find it ; if it was not given back to Mr. Saumering, it is lost or mislaid, so that it cannot be produced ; the defendant's counsel then asked the witness to state the contents of the paper, but the plaintiff's counsel objected to the testimony on the ground that no notice had been given to the plaintiff or his counsel to produce said paper.

The defendant then called Wm. H. Dawson, one of the plaintiff's counsel to the stand, and proved by him that said paper was not in the possession of the plaintiff's counsel, and he believed it was not in possession of the plaintiff; that he never had made any search for it, because he never had had it ; that he had served a notice upon the defendant's counsel to produce that identical paper at this trial ; that the same notice had been given before a former trial between the same parties in this Court, in which the subject of controversy was the rent for the month of January, 1874, and the paper not being produced, evidence of its contents was at that trial given on the part of the plaintiff.

The defendant then called the plaintiff himself to the stand, who testified that said paper was not in his possession, and that he had never seen it since he sent it to Mr. Savin by Mr. Saumering; never made any search for the paper, because I knew I did not have it.

The defendant's counsel then re-called the witness Savin, and asked him to state the contents of said paper, but the plaintiff, by his counsel, still objected on the ground aforesaid, and the Court refused to permit said question to be asked or answered.    The defendant excepted.

*Third Exception.*—The plaintiff then offered the following prayer :

That if the jury find from the evidence that the defendant became the tenant of the plaintiff of the premises mentioned in the evidence, for the term of one year, at the annual rent of eighteen hundred dollars, payable monthly, then the plaintiff is entitled to recover the sum of $150, and the jury may allow interest thereon from the first of March, 1874.

And the defendant offered the four prayers as follows:

1. If the jury find from the evidence, that the contract of writing in this case was by parol only, and was for a year, to begin at a future day, then said contract was void under the fourth section of the Statute of Frauds, as being a contract not to be performed within one year from the making thereof.

2. If the jury find that the contract of renting in this case was not in writing, then such contract or renting can have the force and effect of an estate at will only, unless they shall find that said contract comes within the exception contained in the second section of the Statute of Frauds.

3. The jury cannot find that the contract of writing in this case comes within the second section of the Statute of Frauds, because there is no evidence in the case that the rent received on these premises amounted to two-thirds at the least of the full improved value thereof.

4. If the jury shall find that the contract of renting in this case was not for any specific time, and that the payments were made monthly, then such tenancy was a monthly tenancy, and determinable upon thirty days notice before the termination of any month of the tenancy.

The Court granted the plaintiff's prayer and the defendant's fourth prayer, and rejected the defendant's first, second and third prayers. The defendant excepted.

The jury rendered a verdict for the plaintiff and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART and ALVEY, J., and the decision was concurred in by BOWIE, J.

. *Wm. A. Hammond* and *N. W. Watkins*, for the appellant. ·

The evidence admitted by the Court below, the admission of which forms the ground of the first exception was a mere idle conversation between Mr. Saumering and a person who, although an officer of the corporation, was not then acting, or even professing to be acting in an official capacity. *Leppoc vs. Nat. Union Bank*, 32 *Md.*, 136.

Besides, the conversation itself in no manner tended legitimately to prove the issues joined, and yet it will be difficult for this Court to be able to say positively that it had no effect upon the minds of the jury. Its admission is therefore sufficient cause for reversal.

The second exception presents the question whether the plaintiff, after serving a notice upon the defendant to produce a certain paper at the trial, after testifying that the same is not in his possession, and after having himself given evidence of its contents at a former trial between the same parties upon the same subject-matter, is at liberty to object to evidence of its contents on the part of the other party, who proves clearly that the paper is now in his possession, that he does not know where it is, and is unable to produce the same, upon the ground that no notice to produce that paper was served upon him, (the plaintiff) the testimony being otherwise admissible.

Any such notice would clearly have been nugatory, the plaintiff, his counsel, and his clerk, each having testified that the paper was not in their possession. 1 *Taylor on Ev.*, 449 ; *Foster vs. Pointer*, 9 *Car. & P.*, 718, (38 *E. C. L.*) ; *Rex vs. Haworth*, 4 *C. & P.*, 254 ; *McGahey vs. Alston*, 2 *Mees. & W.*, 212.

Or if such notice would not be nugatory, and the plaintiff really had the paper, he should be estopped from setting up the objection of want of notice, to produce, against evidence of its contents, because, by his own acts and declarations he had misled and deceived the defendant, and thereby prevented it from giving the requisite notice. *Bigelow on Estoppel*, 612; *Doe d. Thompson vs. Hodgson*, 12 *A. & E.*, 135, (40 *E. C. L.*); *Funk vs. Newcomer*, 10 *Md.*, 301.

There was no objection to the evidence proposed to be offered, of the contents of the paper, upon any other ground than the want of notice, nor could any other valid objection be urged.

The paper was proven by the plaintiff himself to be a blank printed form of a lease filled up by himself in accordance with what he then believed to be the contract of renting. If the renting provided for in that lease was by the month, it would have been the strongest possible evidence against him; and if on the other hand it provided for a yearly renting, it would have corroborated the plaintiff's testimony and damaged the defendant's case. Its contents when offered by the defendant were therefore in any aspect admissible in evidence; if they supported the defendant's view of the contract, they were admissions of the plaintiff most damaging to himself. What the plaintiff might have said would have been admissible against him, *a fortiori* what he carefully and deliberately committed to writing. 1 *Taylor on Ev.*, 648-9, *et seq.; McCreary vs. Hood*, 5 *Blackf.*, (*Ind.*,) 316; *Luckett vs. Clark, Litt.* (*Ky.*) *Sel. Cases*, 179.

The plaintiff's prayer, besides being directly in conflict with the defendant's prayers, and therefore objectionable, was fatally defective in not requiring the jury to find that the month of February, for which the rent is claimed in this case, was within the year, for which they were required to find that the premises had been rented. The

defendant might well have become the tenant of the plaintiff for the term of one year, and yet not have been liable for the rent claimed in this action.

The beginning of the tenancy was not specifically fixed in the testimony; and although the year might have expired before the month of February, 1874, yet under the prayer in question the plaintiff was entitled to a verdict if there ever had been any such tenancy. "The plaintiff's right to recover was not a necessary conclusion from the particular facts enumerated in that prayer." *Abrams vs. Sheehan,* 40 *Md.,* 457 ; *Giles vs. Ebsworth & Hays,* 10 *Md.,* 346 ; *Monroe vs. Woodruff & Robinson,* 17 *Md.,* 159.

The defendant's first prayer should have been granted. The action was brought, not for use and occupation, but specifically upon the contract; and if that was by parol only, and was not to be performed within a year, no action will lie to enforce it. *Taylor on Landlord and Tenant, secs.* 30-38 ; *Stackberger vs. Mosteller,* 4 *Porter,* (*Ind.,*) 461 ; *Delano vs. Montague,* 4 *Cushing,* 42.

The second and third prayers of the defendant are to be construed together, and when so taken, they raise the question whether the latter part of the second section of the Statute of Frauds is not of equal force and effect with the first part of that section. In other words, they assert that in order to bring a verbal lease within the exception contained in said second section, it is necessary, not only to show that the lease does not exceed three years from the making thereof, but also that "the rent therein reserved shall amount to two-third parts at the least of the full improved value of the thing demised." Why should this not be the case? The two clauses stand together in the same sentence, and language could not be clearer than that employed. The object of the enactment is not material; the terms are clear and unambiguous, and effect should be given to them in construction, otherwise the

Courts usurp the province of the Legislature, and virtually repeal one portion of the Statute.

The defendant's second and third prayers should therefore have been granted, and upon the same ground the plaintiff's prayer should have been rejected. *Brown on the Statute of Frauds, section* 32, *&c.; Cody vs. Quarterman,* 12 *Georgia,* 386; *Edge vs. Strafford,* 1 *Cromp. & Jer.,* 391.

The record discloses no evidence whatever as to the improved value of the premises, and the whole lease was therefore simply a tenancy at will, which in Baltimore City is determinable upon thirty days notice. *Baltimore City Code, p.* 936.

*W. H. Dawson* and *James Mackubin,* for the appellee.

The testimony of Saumering as to his conversations with Savin, cashier of appellant, was properly admitted in support of plaintiff's case, tending to prove a yearly renting—as the making of an alteration exceeding in cost a month's rent would not have been made under a monthly tenancy—and that Savin, the agent of the appellant, was acting within the scope of his employment, when he was directing the appellee's workmen to push the work to completion so as to give it possession of the premises.

The Court properly refused to allow the appellant to give parol evidence of the contents of the unexecuted contract which had been sent to the appellee for execution, as there was no sufficient evidence produced that the paper was not in existence; but on the contrary, the evidence traced the paper to the appellant; and even if it were in the appellee's possession there was nothing to show he had made any search for it, or had been notified to produce it. *Gaither vs. Martin,* 3 *Md.,* 146, 158, 159; *Morrison vs. Whiteside,* 17 *Md.,* 452.

And the notice given by the appellee could not avail to the appellant for any purpose, and was of itself sufficient

to have put the appellant upon enquiry, and have enabled it to take the necessary steps to give evidence of the contents of the paper, if it was material to the defence.

The plaintiff's prayer was properly granted as the law of the case, and it was not necessary to have added thereto that to entitle the appellee to recover, the jury must find that the month of February was within the year of the tenancy, as all the proof in the cause showed it to be within the year, no matter from what day, fixed by any of the witnesses, the tenancy commenced.

And had the appellant wished to avail itself of any such exception, it should have made the point below by an instruction from the Court, and have noted at the time of the granting of the prayer, such exception thereto, in accordance with the Act of Assembly. This not having been done, the appellant is precluded from making the point here. *Wolf vs. Hauver*, 1 *Gill*, 84.

The appellant's first, second and third prayers were properly rejected, as the renting was not within the Statute of Frauds. The renting here being for one year only, and the Act of Assembly only requires rentings for more than three years to be reduced to writing, and to that extent repeals the Statute of Frauds, if indeed it were applicable. *Act of* 1856, *ch.* 154, *sub-ch.* 6. And the appellant having entered into possession, and attorned to the appellee, there was such performance on the appellee's part as to take the case out of the Statute. *Ellicott vs. Peterson,* 4 *Md.*, 476.

ALVEY, J., delivered the opinion of the Court.

It is hardly possible to suppose that the evidence admitted by the ruling of the Court as stated in the first bill of exception could have prejudiced the defendant; and if this were the only question in the case we should not reverse the judgment. We think, however, that the evidence should have been excluded. When an agent is

acting within the scope of his authority, his declarations accompanying his acts are admissible, as they are a part of the *res gestæ*, and may qualify or explain the acts done by him. But in this case, the facts that Savin was the cashier of the defendant, and had negotiated for the renting of the rooms from the plaintiff, were not evidence of authority to bind the defendant by the remarks made to the agent of the plaintiff, as to the purpose for which the particular room was wanted, or the terms upon which the previous renting had been made. *City Bank of Balto. vs. Bateman,* 7 *H. & J.,* 104. The declarations at most appear to have been of a purely casual nature, and were without any special signification whatever.

The second exception presents a question of more importance. There was a written lease prepared by the plaintiff, or by his direction, and sent to Savin, the cashier of the defendant, to be signed, but which was never signed. This paper, it seems, has been lost or mislaid. At a former trial between these same parties, the plaintiff gave the defendant notice to produce the paper, and in default of production, gave secondary evidence of its contents. And at the trial of this cause the plaintiff, in his testimony, referred to the paper, and described its nature and character, and his counsel then called upon the counsel of the defendant to produce the paper, under notice previously given. The reply to this request was that the paper was not in their possession. The plaintiff then proceeded to give evidence by his agent, who took the paper to Savin to be signed, that he had not the paper, but that he left it with Savin, the cashier of the defendant. After this evidence on the part of the plaintiff, the defendant proved by Savin that the paper was handed to him by the agent of the plaintiff;—that he declined to sign it, and thinks he gave it back to the agent of the plaintiff; and also proved, by the same witness, that he had searched for the paper and could not find it, and that,

if it was not given back to the plaintiff's agent, it was lost or mislaid, so that it could not be produced. In addition to this, the defendant then proved, by both the plaintiff and his counsel, that they had not the paper, and did not know where it was. Whereupon the defendant offered to prove by Savin the contents of the paper, but the plaintiff objected to such evidence, on the ground that no notice had been given to him or his counsel to produce the paper; and the Court sustained the objection and excluded the evidence.

In this ruling we think there was error. There was really no use in requiring notice to be given the plaintiff to produce the paper. Having himself, on a previous trial in regard to the same subject-matter, given evidence of the contents of the paper, after notice to the defendant to produce it, and in this case also given a like notice to the defendant to produce the paper, he is estopped from saying that he could have produced it if notified to do so. He had been allowed to act upon his professed inability to produce the paper, and upon his assurance to the Court that it was not in his possession or control, and it would now be contrary to good faith to allow him to insist that he could have produced the paper upon notice by the defendant. Moreover, both he and his attorney had sworn positively in this cause that they had not the paper, and did not know where it was. It is well settled that notice will not be required where the adverse party or his attorney has admitted the loss or destruction of the document, for in such case the notice would be nugatory; 1 *Taylor Ev.*, 449, sec. 425; *Rex vs. Haworth*, 4 *C. & P.*, 254; *Foster vs. Pointer*, 9 *C. & P.*, 718; *How vs. Hall*, 14 *East*, 276; and for the same reason notice is unnecessary where the party or his attorney admits, or, as in this case, swears, that the document is not in the possession or control of either of them, and therefore cannot be produced. And we think the evidence

of the loss of the paper was, under the circumstances of the case, sufficient to let in the secondary evidence of its contents. The question, whether the loss of the instrument was sufficiently proved, to admit secondary evidence of its contents, was for the Court to determine, and not the jury. The object of the preliminary proof was merely to establish a reasonable presumption of the loss of the paper; and if the paper was supposed to be of little value, a less degree of diligence, in searching for it, was required, than if it had been regarded as of importance. 1 *Greenl. Ev.*, sec. 558; *Spalding vs. Bank of Susquehanna County*, 9 *Barr*, 28; *Taunton Bank vs. Richardson*, 5 *Pick.*, 436, 443. The degree of diligence exacted in this respect depends, in a great measure, on the importance of the lost document. Here, the paper was not signed, and there was no reason for preserving it with the care that would have been proper if it had been duly signed, and thus made the exclusive evidence of the contract of renting. We think, therefore, the evidence of the contents of the paper should have been allowed to be given.

Upon all the evidence there were five prayers offered; one by the plaintiff, and four by the defendant. The plaintiff's prayer was granted, while all those of the defendant, except the fourth, were rejected.

The prayer on the part of the plaintiff appears to be defective, and should, therefore, have been rejected. The controversy was as to the terms of the renting,—whether for a year, the rent payable monthly, as contended by the plaintiff, or from month to month, subject to termination upon a month's notice, as contended by the defendant. There was some conflict in the evidence as to the exact time when the term commenced; but the defendant entered the demised premises, and continued in possession, and paid rent, to the 1st of January, 1874, when it quit upon giving the plaintiff a month's previous notice. It is only upon the theory that the renting was for a year, the rent

payable monthly, that the plaintiff could recover. By granting the prayer of the plaintiff, the jury were instructed that, if they found that the defendant became tenant of the premises mentioned for the term of one year, at the annual rent of $1800, payable monthly, then their verdict should be for the plaintiff for $150, without referring to the commencement of the term, and without designating for what month—whether January, February, March or April, within the term—the rent was claimed to be due. The prayer was, therefore, too indefinite.

The defendant's first prayer was properly rejected. It asserted that if the contract of renting was by parol only, and was for a year, to begin at a future day, then the contract was void, under the fourth section of the Statute of Frauds, as being a contract not to be performed within a year from the making thereof. This prayer was too abstract; it altogether ignored the facts proved by both plaintiff and defendant, that the latter entered the demised premises under the contract, shortly after the contract was made, and paid rent for a part of the time mentioned.

It is now fully settled, that the effect of the first, second and fourth sections of the Statute of Frauds, taken together, so far as they apply to parol leases not exceeding three years from the making thereof, is this, that the leases are valid, and that whatever remedy can be had upon them, *in their character of leases,* may be resorted to, but they do not confer the right to sue the lessee for damages for not taking possession. And until entry by the lessee the whole estate and right of possession remain in the lessor, the lessee having but an *interesse termini,* and nothing more. *Litt.,* secs. 58 *and* 459; *Co. Litt.,* 270 *a; Doe vs. Walker,* 5 *Bar. & Cr.,* 111. This was the opinion of BAYLEY, B., in *Edge vs. Strafford,* 1 *Cr. & J.,* 391, and his exposition of the Statute has been approved and adopted in several subsequent cases. *Bolton vs. Tomlin,* 5 *Adol. & El.,* 856; *Lowe vs. Ross,* 5 *Exch.,* 553. Such leases are

to be considered as excepted by the second section of the Statute from the operation of the fourth; and which exception is not confined to leases which commence from the time of the making, but extends to others, provided the term does not exceed three years from the making of such parol leases. Thus, a lease by parol for a year and a half, to commence after the expiration of a lease which has a year to run, is a good lease within the Statute of Frauds, as it does not exceed three years from the making thereof. *Ryley vs. Hicks,* 1 *Str.,* 651. And notwithstanding an action will not lie on such an agreement while it is merely executory, that is before entry thereunder by the lessee, yet, when a tenancy has been actually created by entry and payment of rent, or by entry alone, an action will lie, and the terms of the tenancy may be proved by parol. *Inman vs. Stamp,* 1 *Stark, N. P. C.,* 12; *Bolton vs. Tomlin,* 5 *Adol. & El.,* 856. And if the lessee has once entered and taken possession as tenant, and the term be thus commenced, he will be deemed to hold during the continuance of the term, and until it be legally determined, whether he continue to occupy the premises or not. For the principle is, that a constructive holding or occupation as tenant is sufficient after entry, without actual occupation or enjoyment. *Jones vs. Reynolds,* 7 *C. & P.,* 335; *Woodf. L. & T.,* 706.

The defendant's second prayer was properly rejected, because it proposed to leave to the jury the construction of the second section of the Statute of Frauds; and as to the third prayer, there was no evidence whatever to show that the rent reserved to the landlord, during the term, was less than two-third parts of the improved value of the premises demised; that is, two-thirds of the rental value for the term. In the absence of evidence, the Court could not presume that the premises had been demised for a rent that would render the lease void.

As the judgment appealed from must be reversed, we shall say nothing in regard to the motion in arrest of judgment. Whatever defects may exist in the pleading can be corrected by amendment before another trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 21st June, 1876.)