# NOEL CONSTRUCTION COMPANY *vs.* ARMORED CONCRETE CONSTRUCTION CO.

*Agent's declarations: when not binding on principal. Motion in arrest of judgment; objections that may be raised by demurrer. Bill of particulars: effect of—: not demurrable. Verdicts: improper evidence; when Court of Appeals no power to correct.*

The practice of attorneys agreeing together to reduce the size of the record, by omitting all irrelevant matter, is greatly commended by the Court of Appeals, as it saves cost to the parties, and relieves the Court of the burden of reading documents and testimony not necessary for the appeal.

p. 240

In general, the declarations of an agent, made in the course of and accompanying the transaction which is the subject of inquiry, and while acting within the scope of his authority, are binding upon the principal, and may be proved in evidence against him. p. 242

But the declarations of an agent, on his own authority, not accompanying the making of a contract, or the doing of an act on behalf of his principal, and not made at the time of the transaction referred to, are not binding on the principal and are not admissible in evidence. p. 242

It is incumbent on a party seeking to bind a principal by statements made by third parties, to show that such statements were made at a time, and under such circumstances as to be binding upon him. p. 247

A motion in arrest of a judgment on the ground that the verdict improperly and illegally assessed damages * * * for claims * * * that were unliquidated, was held properly overruled, where a certificate of the judge of the trial Court showed that there had been no objection of that character

raised during the trial, and that in the argument before the jury, counsel for the parties used the statements of their respective claims, and each side argued for a verdict for a specific amount, and counsel furnished the jury copies of the detailed statements of their respective claims which they allowed the jury to take with them into the jury room.

p. 250

Under section 9 of Article 75 of the Code (1888), a motion in arrest of judgment will not be allowed for any matters or causes which could have been availed of on a general demurrer to the declaration or other pleadings.          p. 249

While a bill of particulars can not itself be made the subject of a demurrer, and does not form part of a declaration so as to cure any substantial defect in the latter that would be fatal on demurrer, yet a bill of particulars shows the entire cause of action under all the counts of the declaration, and precludes giving evidence of any other demand or claim.

p. 251

A demurrer, entered after a bill of particulars is filed, admits the cause of action to be as there stated, and denies that it furnishes any ground of action.          p. 251

Where in a suit for breach of contract the prayers left for the finding of the jury a number of overcharges made, and of proper credits that were not allowed by the one party or the other, and a general verdict was rendered, although, on appeal, the objection of one of the parties to the admission of certain items in evidence was sustained, it was *held*, that the Court of Appeals had no power to correct the verdict by a *remittur* for the admission of the item which was wrongly allowed to go to the consideration of the jury.          p. 256

*Decided April 8th, 1913.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edgar Allan Poe, Attorney-General,* and *J. Kemp Bart-lett* (with whom were *L. B. Keene Claggett* and *R. Howard Bland* on the brief), for the appellant.

*Charles F. Harley* (with whom were *John B. A. Wheltle* and *Burnette B. Webster* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant entered into a contract with the City of Chicago on the 8th day of December, 1908, by which it agreed to erect the City Hall Building "in conformity to and in accordance with the plans, drawings and specifications and addenda thereto," prepared by the architects named in the agreement. On the 27th day of March, 1909, the appellee agreed with the appellant to do certain work referred to in the agreement and "all other concrete work, if any." It was specifically agreed that the work should be done in conformity to and in accordance with the plans, drawings. specifications and addenda above referred to, and also in conformity to the contract between the appellant and the City of Chicago. The cost of all labor, material, machinery, tools, travelling expenses and the pay of the appellee in the prosecution of the work particularly set forth was not to exceed $125,000.00.

The appellant sued the appellee for an alleged failure and refusal to complete the work and alleged that it was compelled to complete it. A bill of particulars was filed in which there was an alleged balance due the plaintiff of $53,157.67, but an amended bill was subsequently filed in which the balance was claimed to be only $38,612.84. The defendant filed the general issue pleas, and three other pleas, including one of set off in which it claimed that $101,000.00 was due it. The plaintiff plead never promised as alleged to the plea of set off and issue was joined. The trial resulted in a verdict of $4,898.32 in favor of the defendant, motions for a

new trial and in arrest of judgment were made and overruled and a judgment was entered on the verdict.   The first five bills of exceptions present rulings on the admissibility of evidence and the sixth embraces rulings on the prayers, but the exceptions were only taken to the granting of the defendant's sixth and seventh prayers.

The trial of the case lasted nearly three weeks and it was stated at the argument that the record was a very large one but by agreement of counsel it had been reduced to the size now before us—there being only 87 pages in the printed record, in addition to printed copies of the specifications furnished by the parties, and not re-printed in the record.   We take occasion to speak of this to show our approval of the action of the attorneys and we desire to commend the course pursued by them, as it was not only a great saving of cost to the parties but relieved the Court of the burden of reading a large mass of testimony which was not necessary for the purpose of the appeal.   It would expedite the work of the Court and save much useless cost to litigants if this plan was more frequently adopted.

*First*—The first bill of exceptions presents a ruling on the evidence relative to a claim of the plaintiff for an item of $4,500.00 expended by it "for bricking in the spandrel beams in the light Courts," and it claims that was necessary because the defendant did not use concrete as its contract required it to do.   The specifications provide that "all spandrel beams of the street fronts and Courts, including the large spandrel trusses of the vault floor, shall be enclosed with concrete." It was admitted that the drawings showed these spandrel beams laid in a brick wall, without any indication of concrete surrounding them.   The lower Court construed the contract to require the defendant to enclose with concrete the spandrel beams in the light Courts, unless the jury found that concreting them was practically impossible or the plaintiff prevented the defendant from doing the work by bricking in the spandrel beams before the defendant was given a reasonable opportunity to enclose them with concrete.   The plaintiff

adopted that construction, as is shown by the fourth prayer offered by it, and granted by the Court.

When Mr. Volkman, the defendant's superintendent, was on the stand he testified that these spandrels were encased in brick and that at the time nothing was said to him about it. He was then asked, "afterwards was there any discussion about it with the superintendent of Mr. Noel," and answered, "Why, yes; the bricklayers' foreman for the Noel Construction Company followed his drawings, he did not use any specifications at all, so he told me—" At that point there was an objection by the plaintiff, and a motion made that the answer be stricken out. Counsel for defendant then said, "Strike it out until I have asked these other questions," and the following then appears in the record: "Q. Who were present? A. The foreman and Mr. Peterson, the superintendent for the Noel Construction Company, and the assistant foreman. Q. And yourself? A. Yes, sir. Q. Now, was this statement by the foreman made in the presence of Mr. Peterson? A. It was. Q. What did he say? *Mr. Bartlett*: We object to that. (After argument) *Mr. Harley*: I want to show that the work had to be done in brick and that it was so admitted, and that it could not be done in any other way. *The Court*: I will take it subject to exceptions. A. This work at the time of this conversation was pretty well up. I don't remember how high, but it was about two-thirds finished, and the foreman and Mr. Peterson and I were speaking about it one day and the foreman claimed he went ahead with it because the drawings called for it and showed it, and Mr. Peterson claimed that one part of the specifications called for concrete and Mr. Peterson and this bricklayer admitted to me that it was not possible to put concrete in this place, that there wasn't room for it, and there was nothing ever said to me by the architects about it, and the matter was *stopped*." The witness probably meant "dropped."

Mr. Bartlett then moved to strike out that answer, which had been admitted subject to exceptions, but the Court over-

242 NOEL CONS. CO. vs. ARMORED CON. CO.

Opinion of the Court. [120

ruled the motion and allowed the answer to stand. To that action the plaintiff excepted, and that ruling constitutes the first bill of exceptions. The plaintiff had offered evidence tending to prove that it was possible for the defendant to concrete around the said spandrel beams, but the defendant contended that it was not, and had offered evidence tending to show that no demand was made on it either as to any claim of the plaintiff that the defendant should have done the work, or for any allowance for its alleged omission until about a year after, when it received a letter dated May 5th, 1910, in which the appellant claimed that the quantity of concrete in the Courts omitted was four hundred and fifty cubic yards and demanded $4,500.00 as the cost of encasing the spandrels with brick. The effort of the defendant in offering the evidence objected to was to show that those engaged in the construction for the plaintiff admitted that it was not possible to put concrete in that place, as there was not room for it. It was admitted that Mr. Peterson was superintendent in charge of the construction of the building for the plaintiff, but he did not testify in this case.

There can be no doubt about the relevancy of the evidence, if proven in a proper way, but the real question is whether the statements made at such time as they were binding on the plaintiff. It was said in *Franklin Bank* v. *Steam Nav. Co.*, 11 G. & J. 28: "The rule springing from the relation of principal and agent being that the representations or declarations of an agent made in the course of, and accompanying the transaction which is the subject of inquiry, and acting within the scope and limits of his authority, may be proved. But it does not extend to the declarations or representations made after the transaction, though in relation to it * * * But declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract, or the doing of an act, in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding upon his principal, not being part of the *res gestae*, and are not admissible in evidence."

. The last paragraph is repeated in *Phelps* v. *George's Cr. & C. R. R. Co.,* 60 Md. 536. That was an action of deceit brought by the plaintiffs to recover damages because of alleged false and fraudulent representations and estimates made by the Chief Engineer and President of the defendant concerning the cost of constructing and equipping the defendant's railroad, whereby the plaintiffs claimed they were induced to contract with the defendant to build and equip the road for a sum of money much less than the amount actually required. They offered to prove by one of the plaintiffs that the Chief Engineer of the defendant who had made the estimates of the cost of the road had told him in the fifth month after the work had commenced under the contract, when the witness was complaining to him that the quantities would largely overrun the original estimates, that "if he had shown to these gentlemen in New York that the road was going to cost $700,000 or $800,000, they never would have gone on with the building of the road." That was held to be inadmissible because not made by the Chief Engineer in the course of the negotiations which culminated in the contract, although it was alleged to have been made while the contract was being performed and while the Chief Engineer still held that position.

In *Union Bank* v. *Gittings,* 45 Md. 181, the cashier of the bank called upon the plaintiff in reference to renting his building for the bank; afterwards he and the president agreed with the plaintiff to rent it at $1,500.00 per year, payable monthly; the bank took possession and after a month or two the officers said they had not room enough and wanted to rent the upper room, which only had a side entrance; the plaintiff agreed to put in an iron stairway and let them have the upper room and the rent was then to be $1,800.00, to begin from the time of the alteration; the stairway was put in and the increased rent was paid for some months; afterwards the cashier applied for the reduction of the rent but the plaintiff said he would make no change until the end of the year and they paid up the rent until the first of the fol-

lowing January when they left the building and sent the plaintiff the key which he declined to accept, and afterwards sued for the monthly rent as it became due.    The agent of the plaintiff for the collection of rents and making repairs stated he had the stairway put in, and the plaintiff offered to prove by him "that while engaged in putting up the stairway, Mr. Slavin (the cashier) urged him to push up the work as they wanted the room as a meeting room for the directors." The testimony was admitted below, but this Court, through JUDGE ALVEY, held that it should have been excluded, and said: "When an agent is acting within the scope of his authority, his declarations accompanying his acts are admissible, as they are a part of the *res gestae,* and may qualify or explain the acts done by him.    But in this case, the facts that Slavin was the cashier of the defendant, and had negotiated for the renting of the rooms from the plaintiff, were not evidence of authority to bind the defendant by the remarks made to the agent of the plaintiff, as to the purpose for which the particular room was wanted, or the terms upon which the previous renting had been made."    JUDGE ALVEY referred to *City Bank of Baltimore* v. *Bateman,* 7 H. & J. 104, where it was held that a declaration made by the president of the bank to one of the clerks that certain money which had been brought into the bank by one of the directors was the money of the plaintiff was not admissible evidence, being beyond the scope of the authority delegated to him.    In *B. & O. R. R. Co.* v. *State, use of Allison,* 62 Md. 479, there was an offer to prove that the engineer has said to a switchman immediately after the accident which resulted in killing the father of the equitable plaintiff that "He had pulled the whole train over him."    The witness had said that it was the engineer's business to inform him of any obstruction that might be on the track, so that he could hold a following train until the obstruction was removed.    The engineer told him that a man had been killed on the track and to that there was no objection, but the Court, through JUDGE IRVING, said that the statement above mentioned was "so clearly obnoxious

to the objection of being hearsay, that we need not cite
authority in support of this ruling." In *Dietrich* v. *Balt. &
Hall's Spring Ry. Co.,* 58 Md. 347, declarations of a driver
of a car made about half an hour after the accident occurred
as to the cause of the accident were held to be inadmissible,
as they formed no part of the *res gestae* and the power of
the driver to make such declarations as to effect the princi-
pal was not to be inferred from his simple employment to
drive and conduct the car.    Other Maryland cases might be
referred to, but we deem it unnecessary.    The general rule is
thus announced in 1 *Am. & Eng. Ency. of Law* 691-698:
"After the fact of agency is established by other evidence,
it is a well settled rule that the declarations of an agent, made
while acting within the scope of his authority, and during the
continuance of his agency, in regard to transactions depend-
ing at the very time, may be given in evidence against his
principal as a part of the *res gestae;* * * * But the admis-
sions of an agent not made at the time of the transaction to
which they relate, and not specially authorized by the princi-
pal, are not competent evidence against the latter, although
the relation of principal and agent still exists.    Nor will the
nearness of such subsequent admissions to the transaction
qualify them as evidence, unless they are so immediately
connected with it as necessarily to form a part of its history,
in which case they may be competent."    In 16 *Cyc.* 1008, it
is said: "Declarations of an agent, in order to be admissible,
must be made *dum fervet opus,* while he is actually em-
ployed on the business of his principal, although the author-
ity of the agent continues until the work entrusted to him is
fully completed.    Under the *res gestae* rule, properly so
called, in the law of evidence, narrative statements are ex-
cluded on the ground of irrelevancy.    But it is to be observed
that in the law of agency it is no part of an agent's duty to
prejudice his principal by narrative statements construing or
otherwise affecting his principal's rights or liabilities, or to
discuss the propriety of his conduct even in relation to the

subject-matter of the agency." See also notes to *Havens* v.
*R. I. Sub. Ry. Co.*, 26 R. I. 48, in 3 *Am. & Eng. An. Cases*,
617, and notes to *Conklin* v. *Con. Ry. Co.*, 196 Mass. 302,
in 13 *Ibid.* 857.

There is nothing in *Cecil Paper Co.* v. *Nesbitt*, 117 Md.
68, *American Towing Co.* v. *Baker-Whitely Coal Co.*, *Ibid.*
680, or other authorities cited by the appellee in conflict with
the above authorities. The statement in the brief that "Certainly the admissions of agents as to the very work on which
they are at the time engaged, as to the possibility of placing
concrete therein, is not only evidence, but substantial evidence to controvert the plaintiff's testimony to the contrary"
would unhesitatingly be conceded as a correct statement of
the law, and would be applied if the facts proven justified it.
As we understand the record, however, those are not the
facts, but on the contrary it was shown by Mr. Volkman that
the conversation took place *after the work* on the spandrels
in controversy had been completed. He said in reference to
them "They were encased in brick, that is, those in question,"
and when asked, "Was there any question about it *at the
time?*" replied, "No, there was nothing said to me about it."
The next question was: *"Afterwards* was there any discussion about it with the superintendent of Mr. Noel?" and
then the objection and rulings were made as set out above.
In the answer that was admitted the witness said: "This work
at the time of this conversation was pretty well up. I don't
remember how high, but it was about two-thirds finished."
It is manifest from what appears in the record that the witness was then speaking of the work on the building and not
on these particular spandrels and that they had then already
been encased in brick. The contract price for the erection
and completion of the City Hall was $3,295,000.00, while
that with the appellee for the work it was to do was $125,-
000.00. It will thus be seen that the work to be done by the
appellee was a very small part of the whole which was to be
done by the appellant, and if Mr. Peterson was the superin-

tendent of the appellant throughout the entire work the conversation spoken of by the witness may have taken place a long time after these spandrels were encased in brick. It certainly was *afterwards,* as the witness Volkman showed. If some question had arisen between Volkman and Peterson, or the other authorized agent of the appellant, when that work was about to be done, or even while it was being done, as to whether the appellee was bound to fill the space with concrete, or whether the spandrels should be encased in brick, then it may be conceded that the evidence would have been admissible but how under the well established rule of evidence, as shown by the authorities above cited, the appellant could be bound by such statements of either Peterson or the foreman after that particular work was done we cannot understand.

It can not be denied that when it is undertaken to show that admissions or statements were made by a third party it is incumbent on the party seeking to show it that they were made at a time and under such circumstances as to bind the principal, and hence if there be any doubt as to whether these statements were made during or after the work in question the burden is on the appellee to show that they were made at a time when the appellant was bound by them. In *Adams* v. *Humphreys,* 54 Ga. 496, it was held that the declarations of an agent are not competent evidence against his principal where it does not appear when they were made.

Some cases have made a distinction between statements made by a general agent and those made by a special agent, but in this State it can not be said that such distinction has been made in view of the cases cited above; *City Bank* v. *Bateman,* where the declaration attempted to be offered was that of the president of the bank; *Union Bank* v. *Gittings,* where it was by the cashier; and *Phelps* v. *G. C. & C. R. R. Co.,* where it was by the Chief Engineer of the Company. Of course a general agent may have authority to bind a principal in some matters when his special agent would not, but

after the spandrels had beeen encased in brick by the direction of the foreman of the appellant, and no demand was then made on the appellee to substitute concrete for the brick, and according to Volkman no difference between him and the foreman and Peterson as to the impossibility of putting concrete in that place existed, there is no rule of evidence which would permit their mere opinions, or their unsworn statements, if they be more than opinions, to be used against the appellant. The vice-president of the appellant testified that he had made demand on the defendant to concrete around the spandrel beams, but the defendant refused to do so on the ground that the drawings showed them laid in brick without any indication of concrete surrounding them, and that he therefore notified the defendant that he would use brick and charge defendant for it, which was done. Yet according to the appellee's contention the statements of the foreman and the superintendent made after the brick work had been done, that it was impossible to use concrete, was admissible in evidence, as an admission of the plaintiff. A principal having many agents in connection with the construction of such work would be placed in great jeopardy if the opinions or views expressed by them as to the work—especially as to what has already been done—are to bind him.

The evidence was not offered to contradict the foreman or Peterson, and although it is not shown whether the foreman testified, it is stated in the record that Peterson did not testify. Of course they or either of them could have been called as witnesses by the appellee, but to permit evidence of statements made by agents, even such an agent as Peterson, after the particular transaction is ended, might be very disasterous to principals. There was therefore in our judgment error in admitting this testimony, and as it was on a very material question it was injurious error.

The second exception only shows an objection to and a ruling on the last question. The witness had already stated, and repeated after the exception, what the work had cost his

company without objection, and we can not see how the appellant was injured by the ruling as presented to us in the·record. We can not determine from the record just what evidence was struck out under the ruling presented by the third bill of exceptions. We understand it was what was admitted subject to exceptions, but the record does not show what that was. The rulings presented by the fourth and fifth bills of exception, and the defendant's sixth and seventh prayers were correct. We find nothing in the contract to require the defendant to pay any part of the cost of the watchmen or of the temperary heat. The testimony of the defendant tended to show that at least as to the latter it was injurious rather than beneficial to its work, but in the absence of some provision in the contract, or some agreement to pay those items, they could not be allowed.

It only remains to consider the motion in arrest of judgment which the appellant made but was overruled. The reason assigned in the motion is, "Because the jury by its verdict improperly and illegally assessed damages in favor of the defendant against the plaintiff, based on claims of the defendant that were unliquidated." Without deeming it proper to determine whether the claims which were objected to as unliquidated can be allowed under a plea of set off, inasmuch as no such question was so raised below as to properly present it to us for review, we are of the opinion that the motion was rightly overruled. Section 9 of Article 75, as amended by the Act of 1888, Chapter 547, was intended to prevent the practice which had become too frequent, of a party waiting until the trial was over, and then, if the verdict was against him, have the judgment arrested, instead of presenting the question before or at the trial when the case could be disposed of on its merits, and in many instances amendments could. be made so as to obviate the objection, if well taken. For many years the statute simply provided that "No judgment shall be arrested or set aside for any omission of mere matter of form, nor because one or more of the

counts in the declaration may be bad, if there be one count sufficient in substance," but that was found not to be sufficient, and by the Act of 1888 there was added "nor because of any misjoinder of forms of action or of counts, nor of any other matter or cause which might have been subject of general demurrer to the declaration or other pleadings." Mr. Poe, in section 756a of his valuable work on *Pleadings,* in speaking of that Act said: "This Act completely remedies the evil, places civil and criminal cases, in this particular, upon the same footing, and practically puts an end to motions in arrest of judgment, grounded on alleged defects in the pleadings, and thus introduces a most desirable reform."

As the plea of set off only contains the common counts, a demurrer to that plea would not have reached the question now urged, unless there was a bill of particulars filed on demand of the plaintiffs, disclosing the alleged infirmity in the claims relied on. The record does not show whether one was regularly filed after the demand, but it could have been required and the certificate of the judge shows that no objection to an affirmative verdict for the defendant on the ground that the claims were unliquidated was raised during the trial and "In the argument before the jury, the counsel for the parties used the following statements of their respective claims; and each side argued without objection for an affirmative verdict for a specific amount; and by consent, counsel furnished each member of the jury with a copy, and by consent, and at the request of the counsel of both parties, the jury was allowed to take said copies of said statements with them to the jury room." Detailed statements of their respective claims then followed. If there had been a bill of particulars regularly filed, the effect of a demurrer to it can be seen from what is said by JUDGE MILLER, in *Scott* v. *Leary,* 34 Md. 389: "The effect therefore of the bill of particulars furnished by the plaintiff in this case is to show his entire cause of action under all of the counts of his declaration and at the trial he will undoubtedly be precluded from

giving any evidence of any other demand or claim. In our opinion the effect of the demurrer interposed after this bill of particulars was filed is to admit the cause of action to be as therein stated, and to deny that it furnishes any ground of action, and hence fairly presents the question we have determined, and on which the judgment must be reversed." In that case the declaration contained the common money counts and a count upon an account stated. The lower Court sustained a general demurrer filed after the bill of particulars was furnished. The Court was careful to say: "We do not mean to decide that a bill of particulars is itself the subject of a demurrer or that in this or any case it so far forms a part of the declaration as to cure any substantial defect in the latter that would be fatal on general demurrer," but it did hold that a demurrer under the circumstances we have stated presented the question for determination, which could only be by reason of the bill of particulars filed, which showed what the claim under the common counts was.

The case of *Thompson* v. *Young*, 90 Md. 72, is to the same effect, as we held that the demurrer was properly sustained, although the declaration contained the common counts, because the bill of particulars limited the cause of action to a promissory note on which there could be no recovery. Therefore whether or not the statute technically covers this case, in which by demanding a bill of particulars the questions might have been raised on demurrer, it cannot be doubted that the case is within the spirit of our present practice, which seeks to avoid such delays and hardships as arrests of judgments are likely to cause, when the question can easily and properly be presented before the termination of the trial. If a bill of particulars had been demanded and it disclosed the objection now urged, it could have been reached by demurrer under the above cases, it could have been objected to as insufficient, or the evidence could have been excepted to on that ground.

There is nothing on the face of the record which discloses any objection to the verdict. The pleadings were regular and

the form of the verdict was regular.  "In all cases the validity of a verdict is determined solely by referring to the pleadings and issues, upon which it wholly depends, and without which it has no operation and is incapable of forming the basis of a final judgment."  I *Poe,* section 58.  As the pleadings were in fact correct, and could not well have been attacked if they were not, by reason of the statute, and as the verdict is certainly in accordance with the pleadings and issues, there is no ground for an arrest of the judgment.  But beyond what we have said, if there was any objection to the items relied on by the defendant, the plaintiff could waive them and certainly did so by what we have stated above.  It might as well be said that if a party to a suit has ground for objecting to evidence, but waives the objection and permits the evidence to go before the jury, he can afterwards, if he loses his case, sustain a motion in arrest of the judgment. Of course that could not be, and yet it is very similar to what was done in this case, as the plaintiff not only did not object to evidence tending to sustain the defendant's claims (on any such ground), but actually agreed that the jury should take to its room copies of its statement containing those claims. The motion was properly overruled but it follows from what we have said that the judgment must be reversed by reason of error in the first bill of exceptions.

> *Judgment reversed and new trial awarded, the appellee to pay the costs in this Court, and the costs below to abide the final result of the case.*

----

Boyd, C. J., delivered the opinion of the Court.

The motion for a re-argument and for a modification of the judgment filed in this case must be overruled.  There is nothing in the opinion to justify the statement of the counsel for the appellee, in his brief on the motion for re-argument,

that this Court had said that the spandrel beams had been encased in brick in advance of the work which would properly be done before they were so encased. In speaking of the testimony of the witness that "This work at the time of the conversation was pretty well up. I don't remember how high, but it was about two-thirds finished" we said: "It is manifest *from what appears in the record* the witness was then speaking of the work on the building, and not on these particular spandrels, and that they had then already been encased in brick." We called attention to the fact that the contract price for the work to be done by the appellee was $125,000, while that for the whole building entered into by the appellant was $3,295,000, and we referred to other testimony to show that according to the record the work on the spandrels in question had been completed when the conversation took place. After the witness had explained to the lower Court that the drawings showed where there was to be tile, brick, concrete, and so on, the following appeared in the record: "Q. Was anything omitted in that respect, Mr. Volkman? Of course, if the drawings called for brick you omitted nothing, but how was that work done? *The Witness*: On those spandrels? *Mr. Harley*: Yes. A. They were encased in brick, that is those in question. Q. Was there any question about it *at the time?* A. *No, there was nothing said to me about it.* Q. *Afterwards* was there any discussion about it with the superintendent or Mr. Noel? A. Why, yes; the bricklayers' foreman for the Noel Construction Company followed his drawings, he did not use any specifications at all, so he told me—" At that point Mr. Bartlett objected, and said: "We ask that *the answer* be stricken out," and Mr. Harley said: "Strike *it* out until I have asked these other questions," and then proceeded to ask other questions, which finally resulted in the first exception. The italics in the above are ours.

We would greatly regret a reversal of the judgment based on a misunderstanding of the facts, and would not hesitate

to correct such an error, if made by us, but the Court in consultation and the writer of the opinion when he prepared it gave this exception special consideration, by reason of the fact that it was the only reversible error we found. After thoroughly considering the question as presented by the record, as well as the authorities, we felt constrained to adopt the conclusion we did, and have since found no reason to change it. So far as the statement in the brief in support of the motion that everybody understood what the facts were, it is only necessary to add that the attorneys for the appellant distinctly urged and relied on the point in argument and in their brief, and cited some of the authorities we referred to. As we indicated in the opinion, when a party seeks to introduce admissions made by an agent out of the presence of the principal the burden is on him to show that they were made at a time when and under such circumstances as they can properly be used against the principal. If the testimony quoted above does not show that the alleged statements were made *after* the spandrels in question were encased in brick it would be difficult to understand what it does mean. It may be that the attention of the learned judge below was by reason of the ground assigned for the objection to the evidence not directed to this point, but if it was admissible, it matters not whether the reason assigned in argument was a valid one.

It ought not to be necessary to cite authorities to show that this Court could not have credited the judgment obtained by the defendant with $4,500.00, and then have directed a judgment to be entered for the balance of the verdict. It did not determine, and could not have determined, as the case was presented, whether the $4,500.00 could or could not be recovered by the plaintiff. Whether it had the right to recover it was left to the jury, under the instructions of the Court, and all that we determined on that question was that the evidence referred to in the first bill of exceptions was erroneously admitted. It was not merely cumulative evidence, but was offered as an admission by the plaintiff's agent or

agents. The jury may or may not have allowed the $4,500 to the plaintiff. In the defendant's claim, which was given to the jury as pointed out in the former opinion, it alleged that there were filed what it called "Plaintiff's overcharges," amounting to over $19,000.00, and what it called "Plaintiff's failures to credit" amounting to over $24,000.00. There were a number of items under those respective heads, including under the first the spandrel beams, etc. Just which or how much of those respective items claimed by the plaintiff, amounting to over $19,000.00, or of the credits claimed by the defendant, amounting to over $24,000.00 the jury allowed in reaching the verdict it is impossible to say. The total claim of the plaintiff, after deducting three items eliminated by the prayers, amounting to $35,514.86, and that of the defendant amounted to $43,501.04. If then, instead of pursuing the course we did, we had directed the verdict in favor of the defendant to be credited with the $4,500.00, it would not only not have been justified by any statute or authorities in this State, but might have done the defendant, as well as the plaintiff, an injustice to the extent of that amount, as it may not have been allowed by the jury, and, if it was, it was for the jury and not for the Court to pass on.

As the defendant has since come into this Court and offered to file a remittitur for the amount, the only remaining question is whether we can properly allow it, and end the case. If we adopt the authorities outside of this State which were cited by the appellee, they can not help it. In reference to 3 *Cyc.* 436, we have not said that the jury allowed the defendant too much by reason of an erroneous instruction or by reason of the improper admission of evidence. From what we have said above it will be seen that we can not determine whether this particular item was or was not allowed the plaintiff, and we have not said it could not have been properly allowed by the jury under the evidence which was not objected to, but because in our judgment evidence that was inadmissible was admitted and we can not say that its admission was not injurious we were compelled to hold as we did.

In 38 *Cyc.* 1439 (also relied on by the appellee) it is said: "The erroneous admission of evidence bearing on the measure of damages is cured by a remittitur of the largest sum that the jury could have awarded under such evidence. But where there is no possibility of showing to what extent the jury were influenced by such improper evidence, the error is not one which can be cured by remittitur."

The appellee's reliance on Article 5, sections 15 and 17, and Article 26, section 14 of Code of 1912 is sufficiently answered by *Frank* v. *Morrison,* 55 Md. 409, where it is said: "For this error in the plaintiff's prayers, it is conceded the judgment must be reversed and a new trial awarded, unless this Court has power to modify the judgment, as the appellees' counsel have suggested. In their brief they offered to remit the amount of interest allowed by the jury, and asked that the judgment be modified accordingly. But, in our opinion, no power has been conferred upon the appellate Court to make the proposed modification. The judgment in the Court below upon the verdict is entirely correct, and the case does not fall under section 14 of Article 5 or sections 39 and 40 of Article 29 of the Code"—referring to Code of 1860. The cases of *Kendrick* v. *Warren,* 110 Md. 73; *Kent* v. *Lyles,* 7 G. & J. 73, and *Ecker* v. *Bank,* 64 Md. 296, referred to do not in our opinion reflect upon the question. This Court can not say that a judgment for the defendant for the amount of the verdict less the $4,500.00 ought to have been given by the Court below, and there is nothing in the Code to authorize this Court to enter up such a judgment. Of course if the plaintiff agreed to a judgment being entered for such amount that could now be done in the lower Court, or we could then consider our right to entertain such an agreement. It is certainly desirable for both of these parties to avoid another prolonged trial, if it can reasonably be done, and it is not the desire of this or the lower Courts to have such trials, if they can be avoided, but we can not exceed our powers in order to bring litigation to an end.

*Motion for re-argument and for modification of judgment overruled.*